720 P.2d 303

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Miguel HERNANDEZ,
Defendant-Appellant.**

No. 8679.

Court of Appeals of New Mexico.

April 24, 1986.

Certiorari Denied June 2, 1986.

Paul G. Bardacke, Atty. Gen., Patricia Frieder, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Wendy York, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant, Miguel Hernandez, appeals from his convictions for two counts of trafficking in a controlled substance in the first degree in violation of NMSA 1978, Section 30–31–20 (Repl.Pamp.1980), and two counts of conspiracy to commit a felony in violation of NMSA 1978, Section 30–28–2 (Repl. Pamp.1984). On appeal, defendant raised five issues, but only briefed four. The four issues before us on appeal are: (1) whether the trial court erred in refusing to grant trial counsel's motion to withdraw and defendant's motion for a continuance; (2) whether the trial court erred in refusing to instruct the jury on the lesser 'included offense of possession of heroin; (3) whether the trial court erred in refusing to direct a verdict on one of the conspiracy counts; and (4) whether defendant's conviction and sentence for both trafficking and conspiracy violate his right against double jeopardy. Issues raised but not briefed are deemed abandoned. *State v. Gonzales*, 96 N.M. 556, 632 P.2d 1194 (Ct.App.1981). Finding no error by the trial court, we affirm defendant's conviction and sentence.

## FACTS

On September 5, 1984, Officer Fred Hill of the Roswell Police Department purchased heroin from Yolanda Duran. On that day, Duran called Hill at the police

undercover base and asked Hill if he wanted to purchase some heroin. Officer Hill agreed and went to Duran's residence. When he arrived, defendant's car was in Duran's driveway, and when he went inside, Officer Hill found Duran and defendant inside the house. Duran asked Officer Hill what he wanted, and he asked for two papers of heroin. A "paper" of heroin is enough for one fix. Defendant looked at Officer Hill, spoke to Duran in Spanish and then said, "Esta bien." Defendant and Duran then left the kitchen area where this conversation took place and went into another part of the house. When they returned, Duran handed a packet wrapped in tinfoil to Officer Hill and said that both papers were in the packet. Officer Hill paid $70 for the heroin.

On September 9, 1984, Officer Hill again bought heroin from Duran and defendant. He met them at the police undercover base. Officer Hill went to their vehicle, where defendant was in the back seat. Another person was in the car. This person was a police informant. Officer Hill told defendant and Duran that he was tired of going through middlemen, and that he was dissatisfied with the quantity and quality of the previously purchased heroin. He asked for a better deal. Defendant then reached into his sock and pulled out what looked like a red candy wrapper. Defendant handed this to Duran, who handed it to Officer Hill, saying it was a lot better. The candy wrapper had a tinfoil packet inside containing two papers of heroin. Officer Hill asked, "Who gets the money?" and Duran replied, "I do." Officer Hill then handed her $100. All of the crimes charged were based on these two incidents. Some of the appeal points are based on other facts. These will be given as needed in the discussion of the issues.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT TRIAL COUNSEL'S MOTION FOR WITHDRAWAL AND DEFENDANT'S MOTION FOR A CONTINUANCE.

At his arraignment, defendant did not feel he was ready to be arraigned. At that time, he wanted another attorney and asked for one. The court decided to make that determination after the arraignment. Defendant pled not guilty. The court advised defendant that he should discuss his problems with his attorney, and if they could not resolve them, one of them should get back to him. At his docket call in December, defendant again requested another attorney on the grounds that his attorney did not have time to do anything for him and had not filed any motions for him. He did not feel that he was being well-represented. The court disagreed, the motion was denied, and the trial date was set.

On the day of trial, defense counsel made a motion to withdraw from the case. She stated that defendant was displeased with her representation and her preparation. After being questioned by the court, defense counsel stated that she could adequately present the case that day, and her motion was denied. Defense counsel then made a motion for a continuance so that Duran could be called. She explained that Duran had not been subpoenaed because Duran's attorney had told defense counsel that Duran would refuse to answer and claim her fifth amendment privilege if she were questioned. Defense counsel thought it would be unethical to call Duran, and that it would hurt her client's case if she were called, and that is why she did not call her. Defense counsel, as an alternative ground for the motion, stated that defendant hoped to obtain other counsel during the continuance.

The trial court denied the motion on both grounds, and gave defendant an opportunity to speak. Defendant complained that his counsel had failed to file the motions which he had requested. He then listed what he wanted: 1) dismissal of some of the charges; 2) bond reduction; 3) indictment by grand jury; 4) a motion for discovery; and 5) a motion to suppress the evidence against him. The court denied defendant's requests and motions. Defendant also wrote to the trial judge, on

May 21, 1985, to complain about the representation he had received at the hands of his trial counsel.

Defendant argues on appeal that the trial court erred in refusing to appoint a different attorney for him, and in refusing to grant the requested continuance. Defendant claims that because of disagreements between himself and his trial counsel, he was inadequately represented and it was, therefore, an abuse of discretion for the trial court to refuse his request for alternate counsel. Defendant then goes on to list the motions and objections which he feels should have been made at and before trial. The state answers by arguing defendant's counsel was effective, and answers defendant's list of motions and objections point by point. These are set out in detail below.

■ As a general rule, an indigent defendant has no right to choose or substitute his appointed counsel. *State v. Salazar*, 81 N.M. 512, 469 P.2d 157 (Ct.App. 1970). The decision to substitute counsel on defendant's request is within the sound discretion of the trial court. *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977). To overturn the trial court's decision, an abuse of discretion must be shown on appeal. *Id.* No abuse of that discretion exists unless inadequate representation or prejudice to the defendant is shown. *Id.* To determine whether defendant was ineffectively assisted at trial, the criminal proceedings are reviewed as a whole. *State v. Henry*, 101 N.M. 277, 681 P.2d 62 (Ct.App.1984). In order to do this, we will review the points defendant has raised in his brief.

### A. Motion for Severance of Counts

Defendant argues that trial counsel should have made a motion for severance pursuant to Rule 34 of the Rules of Criminal Procedure. Defendant contends that the September 5 and 9 incidents were separate, and should have been tried separately to prevent the jury from making improper inferences. Defendant states that he was prejudiced by having a single trial because of the possibility of these inferences. The state argues that defendant has not shown he was prejudiced and that a motion to sever would have been properly denied by the trial court, had one been made.

■ Rule 34 allows for severance if it appears that the defendant will be prejudiced by a joint trial of the offenses. NMSA 1978, Crim.P.R. 34 (Repl.Pamp. 1985) (identical to former Repl.Pamp.1980). The decision on severance is within the sound discretion of the trial court. *State v. McCall*, 101 N.M. 616, 686 P.2d 958 (Ct. App.1983). *State v. Burdex*, 100 N.M. 197, 668 P.2d 313 (Ct.App.1983), held that if the "charges logically arise from the same episode or acts of a similar nature", then they may be tried together. *Id.* at 204, 668 P.2d at 320. The defendant must demonstrate prejudice in order to show that his motion for severance was improperly denied. *Burdex.*

Defendant has failed to make the appropriate demonstration here. Defendant does not show that prejudice resulted from the joinder. In his brief, defendant states: "Defendant was convicted on all charges. Had the defendant been prosecuted on each sale separately, the evidence of the other alleged crime would probably not have been admissible." This is not a showing of prejudice. Defendant later states: "Although joinder of the offenses was probably proper [under] * * * Rule 10 * * * since they are distinct felonies occurring at different times and places, they may not be jointly tried over defendant's objection." Defendant relies on *State v. Paschall*, 74 N.M. 750, 398 P.2d 439 (1965), to support this statement. *Paschall* is inapplicable in this case. It is fully distinguishable on its facts. In *Paschall*, four separate informations charged defendant with six crimes which took place from 1959 to 1962. Each crime had a different victim. The four informations were consolidated for a single trial. It cannot be said that the defendant in *Paschall* committed six crimes in a single episode or that they were acts of similar nature.

The charges against defendant constituted acts of a similar nature and occurred within a brief time span from each other. On both occasions in issue here, he was present when a sale of heroin was made by Duran to Officer Hill. It may be inferred that he had knowledge of what was taking place on both occasions. These were clearly acts of a similar nature and were properly tried together. *State v. Johnston*, 98 N.M. 92, 645 P.2d 448 (Ct. App.1982); *State v. Riordan*, 86 N.M. 92, 519 P.2d 1029 (Ct.App.1974). Defendant's claim of prejudice on this issue is without merit.

**B. Motion For A Statement of Facts**

Defendant here contends that a statement of facts was necessary so that he could know what conspiracy he should have been defending against, and what the factual bases for the two conspiracy charges were. The state argues that defendant had more than adequate notice of the crimes with which he was charged, and that there was no prejudice to defendant.

NMSA 1978, Crim.P.Rule 9 (Repl. Pamp.1985), allows the defendant to move for a statement of facts. This rule allows the defendant to gather more information about the charges against him. In this case, defendant already had that information. Attached to the criminal complaint filed against him were two affidavits in which all of the facts were given. These consisted of two separate affidavits for defendant's arrest, detailing the dates and alleged criminal acts of defendant. Moreover, the record shows that a preliminary examination was held on October 10, 1984. This hearing also provided defendant with factual information concerning the charges against him. Defendant, therefore, received a statement of facts even though his counsel failed to ask for one. Defendant was put fully on notice of the crimes with which he was charged and the circumstances surrounding them. *State v. Dobbs*, 100 N.M. 60, 665 P.2d 1151 (Ct.App.1983). No further statement of facts was necessary to put defendant on notice. There was no prejudice to defendant because he was fully aware of the factual bases for the charges against him. There is, therefore, no merit to the claim that a statement of facts was necessary or should have been requested.

**C. Motion to Strike Joe Portio as a Witness**

Defendant argues that Joe Portio was not on the state's witness list and, because he was only disclosed five days before trial, defense counsel should have made a motion to strike. The state argues that the testimony was harmless, and that there was no prejudice to defendant.

Under NMSA 1978, Crim.P. Rule 27 (Repl.Pamp.1985), the state must disclose its witnesses to defendant within ten days after his arraignment. The witness, Portio, was disclosed only five days before trial. There was, then, a violation of Rule 27. However, the failure to disclose a witness will not help the defendant unless he can show he has been prejudiced. *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979). Defendant makes no argument in his brief that he was prejudiced by the testimony of Portio. The state shows that there was no prejudice by outlining Portio's testimony. His testimony merely confirmed Officer Hill's testimony about his movements on September 5 and 9. It was, therefore, simply corroborative or cumulative. "[B]efore defendant [can] be prejudiced, the testimony of the omitted witness must be important and critical, not technical and cumulative." *State v. Quintana*, 86 N.M. 666, 669, 526 P.2d 808, 811 (Ct. App.1974). In addition, five days was long enough for defense counsel to interview the witness given the fact that his testimony was merely cumulative. No prejudice resulted from the testimony of Portio. Defense counsel's failure to move to strike does not help to form the basis of an inadequate representation claim.

**D. Motion for Specific Discovery**

Defendant makes no argument here, and this ground will, therefore, be

**274**

ignored. A contention on appeal is deemed abandoned if appellant fails to cite authority or to explain the claim. *State v. Casteneda*, 97 N.M. 670, 642 P.2d 1129 (Ct. App.1982).

### E. Motion to Disclose Confidential Informant

Defendant argues that trial counsel should have moved for disclosure of the identity of the confidential informant present at the September 9 sale of heroin. Defendant argues that because this person was an eyewitness, an in camera hearing should have been held to determine what his or her testimony would have been. The state argues that the defense had no right to disclosure under NMSA 1978, Evid.Rule 510 (Repl.Pamp.1983), and defendant has failed to argue how disclosure would have been helpful.

 Rule 510(c)(1) allows for the disclosure of a witness when no privilege exists because the witness has already been disclosed in one way or another. While defendant seems to claim that the privilege was waived in this case, no argument is made to that effect, and the evidence does not support the claim. Under these facts, disclosure under Rule 510(c)(1) would have been inappropriate.

Defendant then goes on to say that an in camera hearing should have been held pursuant to Rule 510(c)(2) because the informer was an eyewitness to the September 9 transaction. Defendant does not argue that this would have helped his case, nor does he argue that he was prejudiced because of the lack of such a hearing. Defendant has made no showing on appeal that the informant's identity would have been helpful to him. That is the showing that he would have had to have made at trial to invoke the exception. *State v. Bauske*, 86 N.M. 484, 525 P.2d 411 (Ct.App. 1974).

 This court has held that disclosure of an eyewitness informant under Rule 510 requires the trial court to "conduct an *in camera* hearing and determine whether the possible eyewitness would 'be able to give testimony that is relevant and helpful to the defense of an accused, or is necessary to a fair determination of' defendant's guilt or innocence. Evidence Rule 510(c)(2)." *State v. Gallegos*, 96 N.M. 54, 58, 627 P.2d 1253, 1257 (Ct.App.1981). This does not mean, however, that every eyewitness should be disclosed.

While we are cognizant of the ... need for disclosure of all relevant, helpful or necessary evidence, we are equally aware of the state's need for reliable, confidential informants, especially in the enforcement of narcotics laws. To require the state to reveal the informer's identity in every instance where that person has witnessed and helped arrange the drug transaction, without first determining whether the informer's testimony will be at all relevant or necessary to the defense, would unreasonably cripple the state's efforts at drug law enforcement.

*State v. Robinson*, 89 N.M. 199, 201, 549 P.2d 277, 279 (1976). Defendant fails to argue that this would have helped him, fails to argue that disclosure would have helped him more than it would have hurt the police, and fails to argue that he was prejudiced by the lack of a hearing. "Unless there is some claim that the informer's testimony is needed, an *in camera* hearing is not required." *State v. Martinez*, 97 N.M. 316, 318, 639 P.2d 603, 605 (Ct.App. 1982).

### F. Failure to Make Objections at Trial

Defendant raises an additional point under Issue I in his brief. Defendant complains that trial counsel failed to make objections to prosecutorial comments and witness testimony at the trial. This failure relates to two issues: 1) the separate case against Duran, and 2) the testimony of the undercover narcotics agent, Fred Hill. These will be dealth with individually below.

#### 1. The separate case against Yolanda Duran.

 Three prosecutorial comments are complained of here: 1) the prosecutor

mentioned, in his opening statement, that Duran was separately arrested and charged; 2) the prosecutor mentioned, in closing, that Duran was equally culpable; and 3) the prosecutor mentioned, in closing, that Duran acted at defendant's direction. (A fourth comment was also mentioned in defendant's brief, but trial counsel objected to it, so it is not properly raised here.) Defendant argues that the comments were inadmissible because they were irrelevant. It seems clear that these were fair comments on the evidence and did not form the basis for objection on the part of trial counsel. The prosecutor may make comments on the evidence. *State v. Vigil*, 86 N.M. 388, 524 P.2d 1004 (Ct.App.1974). He is given latitude in his closing, *State v. Montoya*, 95 N.M. 433, 622 P.2d 1053 (Ct.App. 1981), and may discuss inferences which can be drawn from the evidence. *State v. Anaya*, 79 N.M. 43, 439 P.2d 561 (Ct.App. 1968). That is what occurred here. Defense counsel's failure to object to these comments does not, therefore, help create the basis for defendant's inadequate representation claim.

### 2. The testimony of the undercover narcotics agent, Fred Hill.

Defendant complains about five matters in connection with Officer Hill's testimony: 1) Officer Hill "rambled" about defendant's dangerousness; 2) Officer Hill testified as to why he dressed as a biker to make the heroin purchases; 3) Officer Hill "speculated" about defendant's interest in the transactions; 4) Officer Hill said that defendant was the boss of the operation; and 5) Officer Hill was asked if the transactions were unusual. (Officer Hill also testified about his "nervousness" regarding defendant. This is raised in defendant's brief, but trial counsel objected to it, so it is not properly raised here.)

Defendant argues that Officer Hill's "statements were prejudicial because they suggested to the jury that Defendant was a drug trafficker and that he was, therefore, a dangerous person." Defendant also claims that Officer Hill's comments were irrelevant and, therefore, inadmissible.

■ It seems clear that the state, when charging defendant with trafficking in a controlled substance, may prove that he is a drug trafficker. Every time the state proves its case, it is prejudicial to defendant in that sense. The testimony of Officer Hill was not prejudicial in an impermissible way, and it was relevant to show that defendant committed the crimes alleged. Officer Hill's testimony was not properly objectionable and it does not form the basis for an inadequate representation claim.

Defendant has not shown that he received inadequate representation at trial. Although he did ask for substitute counsel, his request was appropriately denied by the trial court. If defendant's counsel was ineffective, we have no record of it. It cannot be reviewed on appeal.

Our review of the record indicates that he received adequate assistance at trial. As the state's brief shows, trial counsel asked questions on voir dire, made juror challenges, presented defendant's theory in her opening, made objections during testimony, conducted cross-examination, kept out a state's exhibit, made a motion for a directed verdict on one of the charges, and tendered jury instructions on lesser included offenses. Also, the trial judge stated at defendant's sentencing: "First I will comment, as far as the letter goes, that Miss Ehler did try hard to represent you, and I think, in my opinion, that she was hampered by your failure to cooperate with her. I believe that she did the best she could under the circumstances." It seems clear, based on the record available, that defendant received adequate representation and a fair trial. This point has no merit.

■ Defendant's final contention under this point of appeal is that it was an abuse of discretion for the trial court to refuse to grant the requested continuance. Although defendant raises this, it does not appear to be argued in his brief. In any event, the motion for a continuance was properly denied. Trial counsel said that

she was prepared to proceed with the case. Defendant had no other valid reason to request the continuance. The denial of a continuance is reviewed on an abuse of discretion standard. *State v. Tovar*, 98 N.M. 655, 651 P.2d 1299 (1982). No abuse has been shown here. Since there was no abuse resulting in prejudice to defendant, this contention, likewise, is without merit. *State v. Perez*, 95 N.M. 262, 620 P.2d 1287 (1980).

## II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF POSSESSION OF HEROIN.

▆▆▆▆ Defendant here argues that he was entitled to an instruction on the lesser included offense in regard to the September 9th transaction. Instructions on possession were tendered by trial counsel, but they were refused. Defendant argues that his instructions on the lesser offense were incorrectly refused because his defense was that he only possessed heroin. Defendant states that there was evidence to support his contention that possession was the highest crime committed. Defendant also seems to argue that he did not transfer the heroin to Duran on September 9 because he did not "own" it, and it was, therefore, not his to give away. It does not appear, from defendant's brief, on what he bases the claim, that he did not "own" the heroin. Defendant's argument about ownership is irrelevant here. The statute does not require ownership. It prohibits defendant from *transferring* narcotics by way of distribution, sale, barter, or gift. *See* Committee commentary, NMSA 1978, UJI Crim. 36.02 and 36.10 (Repl.Pamp.1982) and § 30–31–20(A)(2). Ownership is not an element. Therefore, denial of ownership cannot be used to show that defendant could not have been guilty of *trafficking* in heroin because he did not *own* the heroin in question. Defendant's argument is totally without merit.

On the lesser included offense issue, the state argues that possession was not the highest degree of crime committed by defendant. The state argues, based on the evidence, that trafficking was the crime committed. First,

[t]o permit an instruction on a lesser included offense, there must be evidence tending to establish the lesser offense * * *. Second, to permit an instruction on a lesser included offense, there must be some view of the evidence which could sustain a finding that the lesser offense was the highest degree of the crime committed.

*State v. Fish*, 102 N.M. 775, 779, 701 P.2d 374, 378 (Ct.App.1985) (citations omitted).

▆▆▆▆ Possession of heroin is a lesser included offense of trafficking in heroin. *State v. Alderete*, 91 N.M. 373, 574 P.2d 592 (Ct.App.1977). There was evidence that the lesser offense was committed on September 9. Officer Hill testified that defendant took the candy wrapper, which was later found to contain heroin, out of his sock. That would mean he possessed heroin. However, defendant fails to meet the second test. The evidence simply does not support defendant's claim that possession was the highest crime which occurred. The evidence shows that defendant, aware that a heroin sale was being negotiated, gave a quantity of the drug to Duran. Based on the facts of the case, admitted in defendant's brief, possession was not the highest crime committed. *Id.* Defendant is not entitled to an instruction on his theory of the case unless there is some evidence to support it. *Poore v. State*, 94 N.M. 172, 608 P.2d 148 (1980). The highest crime committed here was not possession, but trafficking, as the evidence shows. Defendant was not entitled to an instruction on the lesser included offense, and his conviction for the September 9 sale will be affirmed. *State v. Romero*, 94 N.M. 22, 606 P.2d 1116 (Ct.App.1980).

## III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO DIRECT A VERDICT ON ONE OF THE CONSPIRACY COUNTS.

At trial, defense counsel moved for a directed verdict on Count IV of the indict-

ment. Defense counsel argued that the evidence supported only a single conspiracy. The motion was denied. On appeal, defendant makes four arguments under this point: he argues that there was insufficient evidence to support any conspiracy; that, at most, only one conspiracy existed; that the two convictions for conspiracy violate his right against double jeopardy; and that the offenses of conspiracy and trafficking merge. These will be addressed individually below.

 There was sufficient evidence of conspiracy. As the facts previously recited indicate, defendant was present when sales of heroin took place and was involved in both transactions. Conspiracy may be proved by circumstantial evidence. *State v. Chavez*, 99 N.M. 609, 661 P.2d 887 (1983). An agreement between Duran and defendant may be inferred from the facts as recited. *State v. Ross*, 86 N.M. 212, 521 P.2d 1161 (Ct.App.1974). There was substantial evidence of conspiracy.

The key issue here is whether more than one conspiracy existed. Defendant argues that at most only one conspiracy existed. The state argues that there were two. It seems that two "conspiracies" can be inferred from the evidence because two sales took place. Each sale gives rise to a discrete conspiracy. However,

> [i]t is the agreement constituting the conspiracy which the statute punishes. * * A conspiracy is a common design or agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means. * * * [I]t is the object of the conspiracy which is examined when a court evaluates the number of possible conspiracies. Several illegal acts may be involved in reaching one goal. The test is whether the agreement in question has a single, unified purpose or a common end.

*State v. Gilbert*, 98 N.M. 77, 81, 644 P.2d 1066, 1070 (Ct.App.1982) (citations omitted).

In *Gilbert*, the court held that defendant and his co-conspirators had five agreements because five different objects could be identified to support them. In contrast, in *Ross*, the court held that only one conspiracy was proved where the evidence showed that defendants agreed to commit damage to insured property and arson so that they could collect the insurance proceeds. At trial, defendant was convicted on two counts of conspiracy, but the court of appeals found that "one conspiracy was directed toward two criminal acts." *Id.* 86 N.M. at 214, 521 P.2d at 1163. It therefore vacated one conviction and sentence for conspiracy, and affirmed the other. In *State v. Thoreen*, 91 N.M. 624, 578 P.2d 325 (Ct.App.1978), the court again had to consider the number of conspiracies committed by defendant. The case involved multiple construction loans to three named borrowers which were arranged by two defendants for fraudulent purposes. Defendant was convicted on three counts of conspiracy. On appeal, the court of appeals held that the evidence showed only one conspiracy, and that the use of three different borrowers was just a method for carrying out the scheme. The court went on to hold that only one sentence could be imposed for the conspiracy.

*Gilbert, Thoreen* and *Ross*, are the New Mexico cases which discuss how this court should determine the number of conspiracies committed. Other jurisdictions have dealt with the issue of single versus multiple conspiracies and developed workable tests. *See Ward v. United States*, 694 F.2d 654 (11th Cir.1983); *United States v. Hawkins*, 661 F.2d 436 (5th Cir.1981); *United States v. Bendis*, 681 F.2d 561 (9th Cir.1981); *People v. Skelton*, 109 Cal. App.3d 691, 167 Cal.Rptr. 636 (1980).

 In *Bendis*, the court held that two separate conspiracies exist where, although conspirators had important connections in one city, each implicated distinct parts of the world which the other did not and different time periods characterized two conspiracies so that there is no overlap in time when the conspiracies were underway. In this case, there was a separation of four days between the two drug sales. The sales took place at separate locations, and involved sales at different prices. The

evidence adduced at trial shows that defendant was involved in both sales with Duran and there was ample evidence from which the jury could infer that the sale of drugs on both occasions was a joint enterprise. Under New Mexico law, circumstantial evidence can be used to prove a conspiracy. *State v. Chavez,* 99 N.M. 609, 661 P.2d 887 (1983). The existence, or absence, of a conspiracy is both a legal and factual question, and once the statutory requirements are met, the issue of whether there are one or more conspiracies is a factual one for the jury. *United States v. Hawkins.* A determination of whether one or more conspiracies exists should depend on the facts found by the jury, and here, there was evidence to support the findings by the jury and we will not disturb its determination. The trial court did not err in denying defendant's motion for a directed verdict on Count IV and his conviction on that charge will be affirmed.

## IV. WHETHER DEFENDANT'S CONVICTION AND SENTENCE FOR BOTH TRAFFICKING AND CONSPIRACY VIOLATE HIS RIGHT AGAINST DOUBLE JEOPARDY.

Defendant here argues that the offenses merge because one necessarily involves the other. Defendant also argues that the same evidence is used to support both offenses, either because there was only one conspiracy, or because, as to the September 5 convictions, the same evidence was used to support both conspiracy and trafficking. The state argues that both the same evidence test and the merger test are satisfied in this case.

First, "conspiracy and the completed offenses are separate offenses and conviction of both does not amount to double jeopardy." *State v. Armijo,* 90 N.M. 12, 15, 558 P.2d 1151, 1154 (Ct.App.1976). Substantive and conspiratorial offenses are separate offenses for which separate convictions and punishments can be imposed. *Id.* A plea of double jeopardy is no defense to convictions for a substantive offense and a charge of conspiracy to commit that offense. *State v. Smith,* 102 N.M. 512, 697 P.2d 512 (Ct.App.1985).

Second, the facts show that distribution could be committed without also committing conspiracy, because the statutes in issue have different elements. Section 30–28–2 requires proof of "knowingly combining with another for the purpose of committing a felony," while Section 30–31–20, the provision against trafficking in heroin, does not include that element. Therefore, there was no merger.

Defendant asserts that the double jeopardy bar applies in this case because the evidence used to support both convictions is the same and cites to *United States v. Austin,* 529 F.2d 559 (6th Cir.1976). *Austin* is inapplicable here. *Austin* is a different kind of case from the case at bar. There, the defendant was charged with (a) inducing American Motors to offer him a car (bribe); (b) accepting the bribe; and (c) conspiracy to commit (a) and (b). *Id.* at 560–61. It is clear that Roe cannot induce Doe to offer him a bribe and then accept that bribe without there being a common design or agreement between Roe and Doe to transfer a bribe, i.e., a conspiracy. The evidence would necessarily have to be the same.

Comparing that to this case, it is equally clear that one can distribute heroin, or intend to distribute possessed heroin, as a solo activity. Defendant did not, of necessity, have to conspire with Duran in order to traffic. Therefore, defendant fails the "same evidence" test in *Austin.* No double jeopardy violation has been shown, therefore, his convictions are affirmed.

Defendant has not demonstrated any error by the trial court regarding the issues raised, therefore, his convictions and sentence are affirmed.

**IT IS SO ORDERED.**

DONNELLY and BIVINS, JJ., concur.