Richard J. MONTOYA, Petitioner–Appellant,

v.

Ron LYTLE, Warden, Southern New Mexico Correctional Facility; New Mexico Attorney General for the State of New Mexico, Defendants–Appellees.

No. 01–2318.

United States Court of Appeals, Tenth Circuit.

Nov. 20, 2002.

Stephen P. McCue, Fed. Public Defender, Benjamin A. Gonzales, Asst. FPD, Office of the Federal Public Defender, Albuquerque, NM, for Petitioner–Appellant.

Max Shepherd, Office of the Attorney General, Albuquerque, NM, Elizabeth Major Blaisdell, NM Attorney's General's Office, Santa Fe, NM, for Defendants–Appellees.

Before O'BRIEN and PORFILIO, Circuit Judges, and KANE,* Senior District Judge.

* The Honorable John L. Kane, Senior District Judge, United States District Court for the

## ORDER AND JUDGMENT**

O'BRIEN, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Richard J. Montoya appeals from the district court's order denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus. In order for Montoya to proceed on appeal, we must grant him a certificate of appealability (COA). *Id.* § 2253(c)(1)(A). A COA will only issue "if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). We grant COA, but affirm the order denying Montoya's habeas petition.

A New Mexico jury convicted Montoya of armed robbery and felony murder. The state district court sentenced him to life imprisonment for the felony murder and nine years for the armed robbery, to be served consecutively. Both crimes resulted from a drug deal gone bad, in which either Montoya or his accomplice, David Munoz, shot and killed Robert Larson, an undercover narcotics officer.

The state theorized that the shooting arose from an attempt by Montoya and Munoz to rob Larson at gunpoint. Montoya argued that he had not robbed Larson. Instead, he claimed, Larson made a homosexual advance toward him during the drug deal and then pulled out a gun when Montoya resisted. Montoya contended that the conflict then escalated and Munoz shot Larson in an act of third-party self-defense.

Montoya raises two Sixth Amendment claims. His first claim involves an alleged conflict of interest. Montoya contends that Larson's ex-wife would have testified if called at trial concerning Larson's homosexuality and illegal narcotics activities. He asserts that his counsel did not call Mrs. Larson because counsel had previously represented Mrs. Larson in her divorce from Mr. Larson and had an obligation to her not to reveal confidential information about Mr. Larson received during the course of that representation.

Montoya contends that the district court erred in failing to grant him an evidentiary hearing on this issue. He did not develop the factual basis for this claim in state court, a defect which ordinarily imposes a bar to a federal evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Montoya asserts, however, that he was improperly denied an evidentiary hearing in state court in spite of his diligent efforts to obtain one. *See Williams v. Taylor*, 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (stating evidentiary hearing is not barred by § 2254(e)(2) where petitioner is unable to develop claim in state court despite diligent effort).

Even assuming he was improperly denied an evidentiary hearing in state court, Montoya is not entitled to a federal evidentiary hearing. We may grant him such a hearing only if his allegations, if true and not contravened by the record, entitle him to habeas relief. *Walker v. Gibson*, 228 F.3d 1217, 1231 (2000), *cert. denied*, 533 U.S. 933, 121 S.Ct. 2560, 150 L.Ed.2d 725 (2001). As will be seen, his allegations fail to meet this standard.

District of Colorado, sitting by designation.
** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

First, Montoya states an incorrect standard for assessing his conflict of interest allegations. He contends that to receive habeas relief on this issue, he need not show prejudice from the alleged conflict, only that it "actually affected the adequacy of [the attorney's] representation." *Cuyler v. Sullivan*, 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The Supreme Court, however, has never extended the *Cuyler* standard to cases involving successive, rather than multiple, representation. *See Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 1245–46, 152 L.Ed.2d 291 (2002). There is, therefore, no "clearly established federal law, as determined by the Supreme Court of the United States" mandating reversal of a conviction on a mere showing of a conflict of interest involving successive representation that adversely affected the attorney's representation of his client. *See* 28 U.S.C. § 2254(d)(1) (setting forth standard for grant of federal habeas relief for claims adjudicated in state court). Instead, Montoya must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mickens*, 122 S.Ct. at 1240 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ Evidence of Larson's alleged homosexuality and illegal drug activities was only relevant to the first-stage issues in this case [1] to the extent it bolstered Montoya's self-defense theory. The jury was instructed it could not entertain a theory of self-defense if it believed that Montoya's own attempt at armed robbery provoked Larson to make a threat of bodily harm. R. Vol. II at 219. Thus, in order to prevail on his Sixth Amendment claim, Montoya must show that the omitted evidence had a

reasonable probability of persuading the jury that his need to resort to force resulted from Larson's own aggressive actions rather than from the robbery of Larson. *See State v. Chavez*, 99 N.M. 609, 661 P.2d 887, 889 (1983). To call this burden a heavy one is an understatement. Since the jury convicted Montoya of armed robbery, it must have found that he was armed with a gun and that he took money from Larson by force or violence or threatened force or violence. R. Vol. II at 221. Since it convicted him of felony murder, it must have found that Larson's death occurred *during* the commission of the robbery. *Id.* at 211. Montoya must show that the proposed evidence would have to be sufficient to sway the jury into believing an entirely different version of events.

Montoya's testimony about the alleged homosexual advance was not corroborated by David Munoz, the only other witness in the motel room where Larson was killed. Other witnesses testified, however, that Montoya had stated before the shooting that he intended to "burn" Larson, and afterwards that he had "burned" Larson. It is uncontested that Montoya took a gun with him into the hotel room where Larson was killed. Under the circumstances, additional evidence about Larson's alleged homosexual propensities or illegal drug use was not reasonably likely to have changed the outcome of Montoya's trial. He fails to show his entitlement to an evidentiary hearing or to habeas relief on this issue.

In his second issue, Montoya contends that his appellate attorney was constitutionally ineffective in failing to raise a claim that his convictions and consecutive sentences for felony murder and armed robbery violated double jeopardy. At the

---

1. Montoya faced the death penalty in this case, but the jury did not award it and there

are no second-stage sentencing issues in this appeal.

time Montoya was convicted, a defendant could be convicted and sentenced for both felony murder and the predicate felony upon which the felony murder was based. *See State v. Stephens*, 93 N.M. 458, 601 P.2d 428, 432–33 (1979). In 1995, however, the New Mexico Supreme Court, in a case with facts similar to those of Montoya's, determined that where unitary conduct is involved, double jeopardy principles dictate that one may not be convicted of both felony murder and the underlying felony. *State v. Contreras*, 120 N.M. 486, 903 P.2d 228, 233 (1995).

█ Although *Contreras* was decided more than a decade after Montoya's direct appeal was concluded, Montoya argues that his attorney could have anticipated the arguments that caused the New Mexico Supreme Court to change course and made them in his own case. *Contreras*, however, relied heavily on *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991), a case not decided until many years after Montoya's appeal. *Swafford*, in turn, relied on *Grady v. Corbin*, 495 U.S. 508, 518, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), a Supreme Court case also decided long after Montoya's appeal. Montoya's argument, that his appellate counsel could have anticipated and argued for this "new rationale," is unconvincing. "[C]lairvoyance is not a required attribute of effective representation." *United States v. Gonzalez–Lerma*, 71 F.3d 1537, 1542 (10th Cir.1995).

Montoya's application for COA is GRANTED. The judgment of the United States District Court for the District of New Mexico is AFFIRMED.