This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                    **NO. 29,971**

**FREDERICK WILLIAMS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

    Defendant Frederick Williams appeals his convictions for two counts of

conspiracy to commit kidnapping and one count of conspiracy to commit unlawful taking of a motor vehicle. Defendant argues that the State presented insufficient evidence to support Defendant's conspiracy convictions and that his convictions for three counts of conspiracy violate his double jeopardy rights. We hold that the State presented sufficient evidence to support Defendant's conviction for one count of conspiracy to commit kidnapping, but because the State failed to prove separate conspiratorial agreements, Defendant's convictions for separate counts of conspiracy to commit kidnapping and conspiracy to commit unlawful taking of a motor vehicle violate Defendant's double jeopardy rights. Accordingly, we affirm Defendant's conviction for one count of conspiracy to commit kidnapping and vacate Defendant's convictions for one count of conspiracy to commit kidnapping and one count of conspiracy to commit unlawful taking of a motor vehicle. We remand for resentencing.

**BACKGROUND**

This case arose out of an incident that took place at the home of Karen Naylor on the evening of April 15, 2007. Naylor's son, Tyrone Wood, also lived in Naylor's home. Wood considered Defendant a friend, and Defendant had gone to Naylor's home to visit Wood or record music in Wood's in-home recording studio in the past. On the night of the incident, Defendant went to Naylor's home and knocked on

Wood's bedroom window. Wood went to the front door of the home to let Defendant inside. When Wood opened the door, he saw that Defendant had two other men with him that Wood did not recognize.

Wood asked the three men to wait at the door so that he could go inside and straighten up his bedroom. As Wood attempted to close the front door and walk back to his bedroom, one of the two men with Defendant grabbed Wood's neck and placed a silver-colored gun to Wood's right temple. Defendant and the two men led Wood to his bedroom and told him to sit down. The three men proceeded to search through Wood's bedroom and unplug his computer equipment. Wood described Defendant's involvement as a "stand-off, keep-a-watch type" and that the other two men were more active in searching the bedroom. The three men then carried several of Wood's possessions, including a television, a computer, a printer, a video game console and games, outside of the home.

Naylor testified that she was in her bedroom studying for an exam on the night of the incident. While studying, she heard noises from Wood's bedroom and went to investigate. When Naylor walked into Wood's bedroom, she saw Wood seated at his computer and the three men inside the bedroom. After noticing an assault rifle on a bench in Wood's bedroom, Naylor asked Wood to step outside of the bedroom so that she could speak with him. Naylor then left Wood's bedroom and went back to her

3

bedroom but Wood did not follow. After hearing more noise from Wood's bedroom, Naylor again went to the bedroom and saw that Defendant had the assault rifle in his hands. Defendant told Naylor that Wood owed him $20,000. At that point, one of Defendant's companions told Naylor to go inside Wood's bedroom and sit down. The other man stood at the door of Wood's bedroom to prevent Wood and Naylor from leaving while the other two men searched and took items from throughout the house, including Naylor's car keys, laptop, and wallet from Naylor's bedroom. The three men then left the house in Naylor's car.

The State charged Defendant with two counts of kidnapping, two counts of armed robbery, unlawful taking of a motor vehicle, two counts of conspiracy to commit kidnapping, two counts of conspiracy to commit armed robbery, and conspiracy to commit unlawful taking of a motor vehicle. After a jury trial, Defendant was acquitted of the two counts of kidnapping, the two counts of armed robbery, unlawful taking of a motor vehicle, and the two counts of conspiracy to commit armed robbery. However, the jury convicted Defendant of the two counts of conspiracy to commit kidnapping and conspiracy to commit unlawful taking of a motor vehicle. This appeal timely followed.

Defendant argues that there was only one conspiratorial agreement between Defendant and the two other men and that, therefore, his three conspiracy convictions

4

violate the double jeopardy clause of the federal and state constitutions. Additionally, Defendant argues that the State presented insufficient evidence to support the existence of one conspiracy.

**DOUBLE JEOPARDY**

The jury convicted Defendant of two counts of conspiracy to commit kidnapping and one count of conspiracy to commit the unlawful taking of a motor vehicle. In order to support Defendant's first conviction for conspiracy to commit kidnapping, the State had to prove that (1) Defendant and another person by words or acts agreed to commit the kidnapping of Wood, and (2) Defendant and the other person intended to commit the kidnapping of Wood. The second conspiracy to commit kidnapping conviction required the State to prove that (1) Defendant and another person agreed to commit the kidnapping of Naylor, and (2) Defendant and the other person intended to commit the kidnapping of Naylor. In order to support Defendant's conviction for conspiracy to commit unlawful taking of a motor vehicle, the State had to prove that (1) Defendant and another person by words or acts agreed to commit the unlawful taking of Naylor's vehicle, and (2) Defendant and the other person intended to commit the unlawful taking of Naylor's vehicle.

Defendant argues that two of his conspiracy convictions violate the protections against double jeopardy under the federal and New Mexico constitutions because the

evidence at trial did not support separate conspiratorial agreements to support more than one count of conspiracy. Therefore, Defendant argues that this Court must vacate all but one of his conspiracy convictions. "A double jeopardy claim is a question of law that we review de novo." *State v. Leeson*, 2011-NMCA-068, ¶ 10, 149 N.M. 823, 255 P.3d 401 (internal quotation marks and citation omitted).

Our Supreme Court has recently addressed the issue of "how our courts should analyze a double jeopardy challenge to multiple conspiracy convictions" in multiple punishment cases. *State v. Gallegos*, 2011-NMSC-027, ¶¶ 28, 30, 149 N.M. 704, 254 P.3d 655. In doing so, the *Gallegos* Court "clarif[ied] existing case law and set a new course for the future application of double jeopardy principles to multiple conspiracy convictions." *Id.* ¶ 1. Particularly, the Court determined that the unit of prosecution analysis for multiple punishment cases applies to the crime of conspiracy. *Id.* ¶¶ 43, 50.

Applying a unit of prosecution analysis, the Court held that "a fair inference to draw from the text, history, and purpose of our conspiracy statute is that the Legislature established what we will call a rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed." *Id.* ¶ 55. The "heavy burden" then shifts to the State to "overcome the Legislature's presumption of

6

singularity" using a totality of the circumstances analysis in order to determine whether there were separate agreements or combinations to support separate conspiracy convictions. *Id.* ¶¶ 55-56. If the State fails to overcome this presumption, "the appropriate remedy is to vacate [the d]efendant's redundant convictions with punishment imposed on the single remaining conspiracy at the level of the highest crime conspired to be committed[.]" *Id.* ¶ 64 (internal quotation marks and citation omitted).

In this case, Defendant's three conspiracy convictions raised a rebuttable presumption that Defendant entered into one agreement to commit multiple crimes: two counts of kidnapping and one count of unlawful taking of a motor vehicle. *See id.* ¶ 55. We therefore must determine whether the State proved, by the totality of the circumstances, that there were three separate agreements or combinations forming the basis of Defendant's three conspiracy convictions. *See id.* ¶ 56. In determining whether there are separate agreements or combinations, we consider factors such as (1) whether the location of the alleged conspiracies is the same, (2) any significant temporal overlap between the alleged conspiracies, (3) whether the identity of the co-conspirators and victims involved in the alleged conspiracies overlapped, (4) the overt acts charged, and (5) the role played by the defendant in the alleged conspiracies. *Id.* ¶¶ 42, 57.

Taking these factors into account, the State failed to meet its burden and overcome the presumption that there was only one agreement or combination and therefore one conspiracy. First, all overt acts took place at one location: at Naylor's home. Second, regarding the temporal proximity between the three alleged conspiracies, Naylor testified that the entire ordeal only took ten or fifteen minutes. Third, the three alleged conspiracies involved the same co-conspirators: Defendant and the two other men. We note that the three alleged conspiracies involved separate victims: Naylor and Wood. However, we do not give great weight to the fact that there were separate victims because the victims were both members of the general group targeted by the co-conspirators, the occupants of the house. Fourth, all three overt acts that were subject to conspiracies, the two kidnappings and the unlawful taking of Naylor's motor vehicle, were all part of a continuous event to immobilize the occupants of the home and take items to satisfy the alleged $20,000 debt. Finally, Defendant's role in all three conspiracies was essentially the same. Wood's testimony indicates that Defendant acted as a "stand-off, keep-a-watch type" and that the other two men were more active in searching the house, keeping the occupants immobilized, and taking items. These factors all indicate that Defendant and the two men had one agreement to kidnap Wood and take items from his house to satisfy the debt and that it evolved to include the objectives of kidnapping of Naylor and the taking of Naylor's

motor vehicle.

We therefore vacate Defendant's conviction for conspiracy to commit unlawful taking of a motor vehicle and one conviction for conspiracy to commit kidnapping. *See id.* ¶ 64 (holding that the appropriate remedy is to vacate the defendant's convictions for all but one conspiracy with punishment imposed on the highest crime conspired to be committed).

**SUFFICIENCY OF THE EVIDENCE**

Defendant also argues that the State presented insufficient evidence of an agreement between Defendant and the two other men and therefore the State presented insufficient evidence to support the existence of a conspiracy.

**Standard of Review**

We review the existence of a conspiracy under a sufficiency of the evidence standard. *State v. Hernandez*, 104 N.M. 268, 278, 720 P.2d 303, 313 (Ct. App. 1986). We review the sufficiency of the evidence pursuant to a substantial evidence standard. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776 (internal quotation marks and citation omitted). We view the evidence in the light most favorable to, and indulge all inferences in favor of the verdict. *State v.*

9

*Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198; *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). If there is sufficient evidence supporting the verdict, we do not reweigh the evidence or substitute our judgment for that of the factfinder. *State v. Fuentes*, 2010-NMCA-027, ¶ 13, 147 N.M. 761, 228 P.3d 1181.

**Sufficiency of the Evidence for Conspiracy to Commit Kidnapping**

"For a conspiracy to exist[,] there must be a common design or a mutually implied understanding; an agreement." *State v. Ross*, 86 N.M. 212, 214, 521 P.2d 1161, 1163 (Ct. App. 1974) (internal quotation marks and citation omitted). "Generally, the agreement is a matter of inference from the facts and circumstances." *State v. Reyes*, 2002-NMSC-024, ¶ 20, 132 N.M. 576, 52 P.3d 948 (internal quotation marks and citation omitted).

In order to support Defendant's conviction for conspiracy to commit kidnapping, the State had to prove that (1) Defendant and another person by words or acts agreed to commit the kidnapping of Wood, and (2) Defendant and the other person intended to commit the kidnapping of Wood.

There was no direct evidence of an agreement to kidnap Wood. However, "[a] conspiracy may be established by circumstantial evidence, [and] the agreement is a matter of inference from the facts and circumstances." *Ross*, 86 N.M. at 214, 521 P.2d at 1163. The State presented evidence that Defendant and the two other men

forced their way into the home while aware of Wood's presence, pointed a firearm at Wood, and told him to sit down in his bedroom while they searched for and took items from Wood's bedroom. Further, the State presented evidence that Wood was the target of the actions committed in the home. There was testimony from Naylor that Defendant told her that Wood owed Defendant $20,000, and Defendant gained access to the house by knocking on Wood's bedroom window. This evidence is sufficient to infer that Defendant and the two other men made an agreement to go to the home and commit the kidnapping of Wood in order to rob the house and satisfy the $20,000 debt. *See State v. Lopez*, 2005-NMSC-036, ¶¶ 4, 25, 138 N.M. 521, 123 P.3d 754 (holding that sufficient evidence existed to support a conspiracy to commit first degree murder conviction after evidence that the defendant and a companion went to the victim's home to rob him and subsequently inflicted fatal injuries and threw his body down a well, despite no direct evidence of an agreement), *overruled on other grounds by State v. Frawley*, 2007-NMSC-057, 143 N.M. 7, 172 P.3d 144. We therefore affirm Defendant's conviction for conspiracy to commit the kidnapping of Wood.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's convictions for one count of conspiracy to commit kidnapping. However, because the State did not prove separate

11

conspiratorial agreements, Defendant's convictions for a separate count of conspiracy to commit kidnapping and conspiracy to commit unlawful taking of a motor vehicle violate Defendant's double jeopardy rights. We vacate Defendant's conviction for one count of conspiracy to commit kidnapping and one count of conspiracy to commit unlawful taking of a motor vehicle and remand to the district court for resentencing.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**MICHAEL E. VIGIL, Judge**