This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38893**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JARVAUGHN COLEMAN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Conrad F. Perea, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**     A jury convicted Defendant Jarvaughn Coleman of first degree kidnapping, contrary to NMSA 1978, Section 30-4-1 (2003), aggravated battery against a household member with a deadly weapon, contrary to NMSA 1978, Section 30-3-16(C) (2008, amended 2018), and battery against a household member, contrary to NMSA 1978, Section 30-3-15 (2008), following a domestic violence incident involving Defendant and his girlfriend (Victim). On appeal, Defendant argues that (1) the district court committed

reversible error in denying his request for a lesser included instruction for second degree kidnapping; (2) he was denied his right to a speedy trial; (3) the district court abused its discretion in denying his request for either new counsel or a continuance for the purpose of obtaining new counsel; (4) defense counsel was ineffective for failing to call Stephanie Silva as a witness; and (5) the district court judge should have recused himself.

**{2}** We hold that a lesser included instruction was not supported by a reasonable view of the evidence, that the record does not reflect that Defendant was denied his right to a speedy trial, and that the district court did not abuse its discretion by denying Defendant's request for new counsel or a continuance. We also hold that Defendant has failed to establish that he received ineffective assistance of counsel at trial and that the district court did not abuse its discretion by denying Defendant's motion to recuse. We therefore affirm.

**{3}** Because this is an unpublished memorandum opinion written solely for the benefit of the parties and the parties are familiar with the factual and procedural background of this case, we omit a background section and proceed directly to the legal challenges presented by Defendant on appeal. Where appropriate, we reference the factual and procedural history in our analysis.

## DISCUSSION

## I.      Lesser Included Instruction

**{4}** Defendant first argues that he was entitled to a lesser included offense instruction on his first degree kidnapping charge. We disagree and explain.

**{5}** "A defendant is entitled to an instruction on a lesser included offense when there is some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view is reasonable." *State v. Gaitan*, 2002-NMSC-007, ¶ 11, 131 N.M. 758, 42 P.3d 1207 (alteration, internal quotation marks, and citation omitted). "Failure to instruct the jury on a lesser included offense of a charged offense is reversible error if: (1) the lesser offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue." *State v. Jernigan*, 2006-NMSC-003, ¶ 21, 139 N.M. 1, 127 P.3d 537. Whether a lesser included instruction was warranted is a matter we review de novo. *State v. Munoz*, 2004-NMCA-103, ¶ 10, 136 N.M. 235, 96 P.3d 796.

**{6}** As a preliminary matter and although the third factor, we address and reject the State's argument that Defendant failed to preserve this issue by not tendering an appropriate jury instruction. "[I]f the record reflects that the judge clearly understood the type of instruction the [d]efendant wanted and understood the tendered instruction needed to be modified to correctly state the law, then the issue is deemed preserved for

appellate review." *Jernigan*, 2006-NMSC-003, ¶ 10. Defense counsel requested the lesser included instruction at the close of trial, the State argued against it, and the district court denied Defendant's request.[1] This issue is therefore preserved for appellate review.

**{7}** Defendant was convicted of both aggravated battery with a deadly weapon and simple battery against a household member of Victim. Victim testified that Defendant woke her by beating her, threatened her life while holding a knife in his hand, stabbed her, and then forced her into the shower as a continuous sequence of events. We therefore reject Defendant's contention that a lesser included instruction was warranted because there is no reasonable view of the evidence that reflects that the kidnapping either began after these events or ended before Defendant inflicted a physical injury on Victim. *See State v. Swafford*, 1989-NMCA-069, ¶ 17, 109 N.M. 132, 782 P.2d 385 (rejecting the defendant's argument that he was improperly denied a lesser included offense instruction where the jury convicted the defendant of several separate offenses and a verdict on the lesser included offense would have been inconsistent with the jury's determination that the defendant was culpable on the other charges).

## II. Speedy Trial

**{8}** In reviewing a speedy trial ruling, "we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his speedy trial right and we weigh and balance the *Barker* [*v. Wingo*, 407 U.S. 514 (1972),] factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81. "Under the *Barker* framework, courts weigh 'the conduct of both the prosecution and the defendant' under the guidance of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted his speedy trial right; and (4) the particular prejudice that the defendant actually suffered." *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420.

## A. Length of the Delay

**{9}** The first step in our analysis is to determine whether the length of pretrial delay is "presumptively prejudicial." *State v. Garza*, 2009-NMSC-038, ¶ 23, 146 N.M. 499, 212 P.3d 387. When the length of delay is "presumptively prejudicial," we must proceed to consider all of the *Barker* factors. *Id.* ¶ 21. The district court made no finding about the complexity of the case, but the State concedes on appeal that the presumptively prejudicial threshold has passed regardless of complexity. We agree. Defendant was arrested on September 8, 2017, and his trial ultimately commenced on December 4, 2019, resulting in a delay of just under twenty-seven months. This is well past the

---

[1]The State contends that Defendant was not entitled to a second degree kidnapping instruction because Defendant did not argue that he did not inflict physical injury during the kidnapping. However, because a second degree kidnapping instruction lacks a requirement of injury to the victim, having requested such an instruction, we determine that Defendant implicitly argued that he did not inflict physical injury to Victim during the kidnapping. See UJI 14-403A NMRA.

presumptive prejudice benchmark regardless of complexity. *See Flores*, 2015-NMCA-081, ¶ 5 ("A delay of trial of twelve months is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases."). We therefore proceed to inquire further into the *Barker* factors. *See Garza*, 2009-NMSC-038, ¶ 21.

## B.    Prejudice

**{10}**    Ordinarily under our speedy trial analysis we would next weigh the reasons for the delay, however, in evaluating whether Defendant's speedy trial rights were violated, our review benefits from first considering the prejudice factor. Preventing prejudice against those accused is "the heart of the right to a speedy trial." *Id.* ¶ 12.

**{11}**    "We analyze prejudice to a defendant in a speedy trial case in light of three defense interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Smith*, 2016-NMSC-007, ¶ 60 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citation omitted). The defendant bears the burden of demonstrating and substantiating a particularized showing of prejudice. *See id.*

**{12}**    Defendant contends he suffered oppressive pretrial incarceration and significant anxiety as a result of his continued detention. "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.* Defendant contends he was imprisoned for most of the time his case was pending trial. The record reveals that he spent approximately twenty-one months in custody prior to his release. Defendant violated his conditions of release four months later and his release was revoked.

**{13}**    Defendant argues that he specifically suffered distress due to not being able to help his mother with her health issues. While Defendant did express concern for his mother's health he did so only occasionally, and there is no evidence in the record reflecting that Defendant was denied contact with his mother. Defendant also argues that the expert evaluating his competency testified that improper treatment and medication of Defendant's condition in prison led to his mental condition deteriorating and caused him to become incompetent. Our review of the record reflects that the expert observed that Defendant needed a change in medication, but did not otherwise testify that being improperly medicated or improperly treated in prison led Defendant to become incompetent.

**{14}**    Finally, Defendant argues the delay impacted his defense because his deteriorating mental condition led to a breakdown in communication with his attorney.

However, the record reflects that defense counsel regularly spoke to both Defendant and his family. Defendant did not address lost employment or housing, not having access to services due to the charges pending against him, or other forms of particularized prejudice. *See, e.g., State v. Brown*, 2017-NMCA-046, ¶ 37, 396 P.3d 171 (finding particularized prejudiced where the defendant lost two jobs due to his incarceration, could not obtain employment while on pretrial release before the case was dismissed, and received only three visits from his family due to financial and travel constraints).

**{15}** We therefore hold that Defendant fails to show particularized prejudice. "To find a speedy trial violation without a showing of actual prejudice, the [appellate courts] must find that the three other *Barker* factors weigh heavily against the [s]tate." *State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230. For the reasons that follow, we conclude that Defendant has failed to show that the remaining factors weigh heavily against the State.

## C. Reasons for the Delay

**{16}** The district court did not divide the twenty-seven-month delay into time periods. "There are three types of delay: (1) deliberate or intentional delay; (2) negligent or administrative delay; and (3) delay for which there is a valid reason." *State v. Suskiewich*, 2016-NMCA-004, ¶ 9, 363 P.3d 1247 (alteration, internal quotation marks, and citation omitted). The first type of delay weighs heavily against the state. *Id.* "Valid reasons for delay, such as a missing witness, reasonable time needed to oppose the defendant's pretrial motions, and a defendant going into hiding may be wholly justifiable and not weighed against the state." *Flores*, 2015-NMCA-081, ¶ 8 (alteration, internal quotation marks, and citation omitted). "More neutral reasons for delay, such as negligent or administrative delay caused, for example, by overcrowded courts, the reassignment of judges, or governmental negligence, weighs against the state, though less heavily." *Id.* (alteration, omission, internal quotation marks, and citations omitted).

## 1. September 22, 2017 – January 08, 2018

**{17}** During this period of time, the State and Defendant filed customary pleadings one expects to see filed in a criminal case. The State filed an entry of appearance, a request for a recording of the grand jury proceedings, a demand for disclosure, a demand for notice of alibi or entrapment defense, and a witness list. Defense counsel filed a notice of excusal, an entry appearance and speedy trial demand, a request for hearing to review conditions of release, and motion to appear telephonically for a January 2018 hearing. We therefore agree with the parties that this period weighs neutrally. *See State v. Deans*, 2019-NMCA-015, ¶ 12, 435 P.3d 1280 (weighing a period of normal delay neutrally).

## 2. February 27, 2018 – June 18, 2018

**{18}** This period involves Defendant's attempts to conduct witness interviews. On February 27, 2018, Defendant filed a motion to compel witness interviews. During the hearing on Defendant's motion, the State explained that it was attempting to set up witness interviews but that it might be necessary to obtain material witness warrants. The district court ordered the State to obtain material witness warrants within ten days. Victim was arrested on April 13, 2018, and witness Silva, in whose trailer Defendant and Victim were staying and in which these events took place, was arrested on April 19, 2018. For reasons not clear in the record, defense counsel was unable to interview Victim at a pretrial interview, and Defendant subsequently filed a motion to dismiss or in the alternative exclude her testimony. By the time the motion was set for hearing however, the pretrial interviews were completed. It appears that the State was diligently seeking to produce the witnesses. We therefore consider this period of delay to be justified and to weigh neutrally. *See Garza*, 2009-NMSC-038, ¶ 27 ("[A] valid reason, such as a missing witness, should serve to justify an appropriate delay." (internal quotation marks and citation omitted)).

### 3.     June 18, 2018 – May 14, 2019

**{19}** This next period involves Defendant's competency evaluation and begins with defense counsel filing a motion seeking a forensic evaluation of Defendant on June 18, 2018. On June 25, 2018, the district court stayed the proceedings pending a determination of Defendant's competency and on the following day entered an order for a forensic evaluation. Upon completion of the forensic evaluation and evidentiary hearing, the district court entered an order on December 21, 2018, in pertinent part, finding Defendant incompetent to stand trial and committing Defendant for treatment to attain competency. On May 14, 2019, the district court entered an order finding Defendant competent to stand trial and lifting the stay. "[D]elays caused by competency evaluations should generally not count against the state for speedy trial purposes because the state cannot try an incompetent defendant." *State v. Stock*, 2006-NMCA-140, ¶ 19, 140 N.M. 676, 147 P.3d 885. We therefore weigh this period neutrally.

### 4.     May 14, 2019 – December 4, 2019

**{20}** The final period encompasses the remaining time prior to trial. On May 22, 2019, Defendant filed a motion to dismiss for violation of his speedy trial rights. The motion was denied, but the district court granted Defendant's oral motion for a bond reduction and allowed him pretrial release on June 10, 2019. Defendant failed to maintain contact with his bail bondsman and was taken back into custody on October 17, 2019. Defendant's jury trial was set for November 6, 2019, but rescheduled for December 4, 2019, because the district court judge was scheduled to hear oral argument at the Supreme Court on that same day. The case was proceeding normally during this period with some slight administrative delay caused by the district court. Therefore, we weigh this period slightly against the State. *See Flores*, 2015-NMCA-081, ¶ 8.

**{21}** On balance, three of the periods of delay weigh neutrally and one weighs slightly against the State. We therefore weigh this *Barker* factor very slightly against the State. *See Suskiewich*, 2016-NMCA-004, ¶ 9.

## D.  Assertion of the Right

**{22}** Defendant frequently and repeatedly asserted his speedy trial right throughout the pendency of the case; however, the record reflects that some of these assertions were pro forma assertions, which "are generally afforded relatively little weight in this analysis." *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061. We weigh this factor in Defendant's favor, though not heavily.

## E.  Balancing of the *Barker* Factors

**{23}** Because Defendant cannot show prejudice and the first three *Barker* factors do not weigh heavily in Defendant's favor, we determine that Defendant's right to a speedy trial was not violated.

## III.  Request for New Counsel or a Continuance

**{24}** Defendant next argues that the district court erred in denying his request for new counsel. Defendant asserts he established a total breakdown of communication, which entitled him to new counsel regardless of whether his counsel was competent. We review a trial court's denial of a request for substitute counsel under an abuse of discretion standard. *See State v. Hernandez*, 1986-NMCA-040, ¶ 8, 104 N.M. 268, 720 P.2d 303. An abuse of discretion occurs when a ruling is "clearly against the logic and effect of the facts and circumstances of the case." *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 (internal quotation marks and citation omitted). "No abuse of that discretion exists unless inadequate representation or prejudice to the defendant is shown." *Hernandez*, 1986-NMCA-040, ¶ 8.

**{25}** Here, Defendant did not establish either inadequate representation or prejudice to his defense. When requesting new counsel, Defendant stated, "I do not want to be represented by this man today. I do not want to go to trial. I'm not going to have a fair trial at all. I know that for a fact. That's my gut feeling, and it's telling me right now." However, neither a gut feeling nor a wish for different counsel establishes inadequate representation or prejudice. Further, Defendant has not established a breakdown in communication between himself and his counsel. Defendant did not express a need for new counsel until just prior to the beginning of trial, and when he did so, defense counsel articulated that he met with Defendant several times and explained the preparation he had made for trial. The record further reflects that Defendant and defense counsel were in regular communication throughout Defendant's case. Based upon the record, the district court's decision was not contrary to the logic and effect of the circumstances of the case. Therefore, we affirm the district court's denial of Defendant's motion for new counsel.

**{26}**     In the alternative, Defendant argues that he established sufficient grounds for a continuance. We also review the denial of a request for a continuance under an abuse of discretion standard. *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. When reviewing the denial of a motion for continuance we consider factors "including the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion." *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20.

**{27}**     Defendant fails to establish that the district court abused its discretion in denying his motion for a continuance. Notably, Defendant's request for a continuance was premised on a lack of communication with his counsel and feeling that he would not have a fair trial. Defendant has not established the legitimacy of either of these reasons or that defense counsel inadequately represented Defendant. Delaying the trial would have caused a great deal of inconvenience to Victim, who expressed her fear about going to trial and wanted the trial to proceed. Finally, as discussed, Defendant cannot show prejudice due to the denial of his motion for a continuance. We therefore hold that the district court did not abuse its discretion when it denied Defendant's motion.

## IV.     Ineffective Assistance of Counsel

**{28}**     Defendant next argues that he received ineffective assistance of counsel because defense counsel failed to call Silva as a witness. We address claims of ineffective assistance of counsel under a two-part test, which is derived from *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Lytle v. Jordan*, 2001-NMSC-016, ¶ 25, 130 N.M. 198, 22 P.3d 666. "In order to be entitled to relief on the basis of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Trammell*, 2016-NMSC-030, ¶ 16, 387 P.3d 220 (internal quotation marks and citation omitted). "Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel." *State v. Reyes*, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948, *abrogated on other grounds by Allen v. LeMaster*, 2012-NMSC-001, ¶ 36, 267 P.3d 806. "Claims of ineffective assistance of counsel are reviewed de novo." *State v. Montoya*, 2015-NMSC-010, ¶ 57, 345 P.3d 1056.

**{29}**     Defendant argues that Silva could have cast doubt on Victim's claims and that her testimony could have demonstrated Victim was not kidnapped, meaning the jury would likely have acquitted Defendant. "The decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel." *Lytle*, 2001-NMSC-016, ¶ 47 (internal quotation marks and citation omitted) Here, Defense counsel explained that he did not believe Silva's presence would benefit Defendant because she was also an alleged victim of Defendant. "A prima facie case for ineffective assistance of counsel is not made if there is a plausible, rational strategy or tactic to explain the counsel's conduct." *Id.* ¶ 26 (internal quotation marks and citation omitted).

**{30}** To the extent Defendant directs this Court to defense counsel's later statement that his decision not to call Silva *may* have been an error as Silva's testimony *might* have impeached Victim, there is no evidence in the record reflecting what Silva would have testified to. Thus Defendant's claim of prejudice is based on speculation. Based on the foregoing we hold that Defendant has not established a prima facie case of ineffective assistance of counsel.

## V.     Recusal

**{31}** Finally, Defendant argues that the district court judge should have recused himself because he consistently ruled in the State's favor. In order to require recusal, the judge must demonstrate a personal bias against the party seeking recusal. *State v. Hernandez*, 1993-NMSC-007, ¶ 44, 115 N.M. 6, 846 P.2d 312. However, "[p]ersonal bias cannot be inferred from an adverse ruling or the enforcement of the rules of criminal procedure." *Id.* We review a district court judge's decision not to recuse himself for an abuse of discretion. *State v. Harris*, 1997-NMCA-119, ¶ 14, 124 N.M. 293, 949 P.2d 1190. Defendant did not support his contention of personal bias in his motion to recuse below and has not pointed us to any evidence in the record demonstrating personal bias against him. We therefore hold that the district court did not abuse its discretion in denying Defendant's motion for recusal.

## CONCLUSION

**{32}** For the foregoing reasons, we affirm.

**{33}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JANE B. YOHALEM, Judge**